IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| KATHLEEN POPE, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO., a domestic corporation,<br><br>Defendant. | Case No. 1:19-cv-817<br><br>**CLASS ACTION COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff, Kathleen Pope ("Pope"), by and through her undersigned counsel, on behalf of herself and all others similarly situated, for her Class Action Complaint against defendant, The Kroger Co. ("Kroger"), alleges, upon knowledge as to matters relating to herself and upon information and belief as to all other matters, as follows:

**INTRODUCTION AND SUMMARY OF ACTION**

1.  This is a proposed Class Action brought by Plaintiff on behalf of herself and other consumers who purchased honey from Kroger that is labeled "Private Selection Raw and Unfiltered Wildflower Honey" or "Simple Truth Organic Raw and Unfiltered Honey." Both products are described on their labels as "Raw and Unfiltered" and will hereafter be referred to collectively as the "Raw Honey Products."

2.  Unknown to Plaintiff and the Class, the Raw Honey Products sold by Kroger are not, in fact, raw. That is because Kroger heats the so-called Raw Honey Products to a temperature greater than 105 degrees Fahrenheit when it bottles them to make it easier to bottle and package the honey.

3.  When raw honey is heated to more than 105 degrees Fahrenheit, the enzymes in the honey that are prized by consumers become denatured. That is to say, the enzymes begin to break down and are lost.

4.  Because Kroger's Raw Honey Products are not actually raw, the descriptions on Kroger's labels are inaccurate, incorrect, deceptive, and misleading.

## THE PARTIES

5.  Plaintiff, Kathleen Pope, lives at 705 11th Street, Wilmette, Illinois. Plaintiff does her own grocery shopping.

6.  Defendant, Kroger, is a domestic corporation with its chief executive offices located at 1014 Vine Street, Cincinnati, Ohio. Kroger is a large, publicly traded, national grocery store chain with more than 3,000 locations and more than 440,000 employees. Kroger operates stores under the Kroger name and also under the Mariano's name which Kroger acquired in 2015. Kroger sells food products produced by other suppliers and, in addition, sells at least two propriety lines of goods under its own labels: Private Selection and Simple Truth. At all relevant times, Kroger transacted and conducted business in Ohio, Illinois, and throughout the United States.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act in that (i) there is minimal diversity because Plaintiff is an Illinois resident and seeks to represent a class of Illinois consumers, and Defendant is incorporated in Ohio and has its principal place of business in Ohio, (ii) the amount in controversy exceeds $5,000,000.00 exclusive of interests and costs, and (iii) there are 100 or more members of the proposed plaintiff class.

8.     Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 because Kroger resides in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's and the Class's claims occurred in this judicial district. In addition, Kroger does business and/or transacts business in this judicial district, and therefore, is subject to personal jurisdiction in this judicial district and resides here for venue purposes.

## SUMMARY OF THE CASE

9.     This case concerns Kroger's mislabeling of its premium honey products "Private Selection Raw and Unfiltered Wildflower Honey" and "Simple Truth Organic Raw and Unfiltered Honey."

10.    Kroger's labeling of the Raw Honey Products is inaccurate, incorrect, deceptive, and misleading because the honey sold under these labels is not actually raw.

11.    In fact, the Raw Honey Products are heated by Kroger to a temperature exceeding 105 degrees Fahrenheit in order to ease the processing and packaging of the products.

12.    The enzymes in raw honey heated above 105 degrees Fahrenheit begin breaking down.

13.    Raw honey that has been heated above 105 degrees Fahrenheithas an elevated 5-hydroxymethylfurfural ("HMF") value.

14.    Raw honey typically comes out of the hive with an HMF value in the single digits; that is, an HMF value of 1 to 9 mg/kg.

15.    The scientific community has long recognized that HMF values over 40 mg/kg are strong evidence that raw honey was heated to a high enough temperature for a long enough period of time to break down the enzymes contained in the honey.

16. Accordingly, the Codex Alimentarius has promulgated an international standard under which raw honey must have has a maximum HMF value of 40 mg/kg to ensure that the product has not undergone extensive heating.

17. The Codex Alimentarius is recognized by the World Trade Organization as an international reference standard for the resolution of disputes concerning food safety and consumer protection.

18. The bottle of Kroger's Private Selection Raw and Unfiltered Wildflower Honey recently purchased by Ms. Pope from a Kroger store near her home in Wilmette, Illinois had a tested HMF value of 100 mg/kg, which is 2 ½ times the threshold of 40 mg/kg for raw honey.

19. A bottle of Kroger's Simple Truth Organic Raw and Unfiltered Honey had a tested HMF value of 99 mg/kg, again 2 ½ times the threshold of 40 mg/kg for raw honey.

20. Despite the fact that Kroger's Raw Honey Products are not actually raw, Kroger advertises them, both on the internet and on the products' labels, that they are "Raw and Unfiltered Honey." This is false and misleading.

21. Kroger knew that its labeling of the Raw Honey Products as "Raw and Unfiltered Honey" was inaccurate, incorrect, deceptive, and misleading.

22. Despite this knowledge, Kroger continues to sell the Raw Honey Products at prices it could not hope to receive for processed honey; that is, honey that is not raw because it has been heated to a temperature over 105 degrees Fahrenheit.

23. At all relevant times, Kroger either knew, or should have known, and was reckless in not knowing, that its Raw Honey Products were heated to the point of being cooked, thereby destroying the enzymes that people seek out and expect from the Raw Honey Products.

24. Kroger knew that its Raw Honey Products were mislabeled and that they did not have the health benefits implicitly advertised in any product described as "raw honey."

25. In spite of this, Kroger took no action to (a) inform purchasers of the defects in the Raw Honey Products or (b) recall the mismarked Raw Honey Products. Kroger concealed this knowledge from Plaintiff and the Class.

26. At all relevant times, Kroger knew, or should have known, the Raw Honey Products were (a) defective; (b) would not have the benefits of a actual raw honey product; and (c) the defect, if known, would have failed to meet the reasonable expectations of consumers and would not have been, or would not be, sold at the premium price Kroger charges for its Raw Honey Products.

27. Kroger knew, or reasonably should have known, prior to sale to Plaintiff and the Class, that the Raw Honey Products it offered for sale as "raw" were not, in fact, raw, and also did not contain all of the enzymes found in real raw honey.

28. Kroger's conduct, whether committed intentionally or by negligence, deprived consumers (such as Plaintiff and all members of the proposed Class) of the opportunity to negotiate or pay a lower price to reflect the diminished value of the Raw Honey Products or simply to avoid buying Kroger's Raw Honey Products altogether.

29. Consumers, like Plaintiff and the Class, have reasonable expectations that:

   a. a honey processor's (such as Kroger's) products or marketing would accurately describe their product on their label so that consumers could make their honey purchases based upon accurate information on the label; and/or

   b. a honey company processing, producing, or marketing (such as Kroger) honey as "raw" would only sell such honey it had the physical properties that are associated with raw honey.

5

## KROGER'S CONDUCT WITH RESPECT TO ITS DECISION TO COOK THE HONEY AT ISSUE

30. Kroger knew (or but for its negligence or reckless indifference would have known) that its Raw Honey Products were no longer raw honey after they were heated for processing.

31. Kroger knew (or but for its negligence or reckless indifference would have known) that it or its distribution channels were receiving honey that had been heated above 105 degrees Fahrenheit such that the honey ceased to have the enzymatic properties for which Plaintiff and the Class buy raw honey.

32. Kroger also knew (or but for its negligence or reckless indifference would have known) that even if diligently examined or inspected, consumers would not (a) be capable of determining that Kroger's Raw Honey Products did not have the properties of raw honey and (b) be able to determine the cause of the problems with the Raw Honey Products.

33. Thus, Kroger knew (or but for its negligence or reckless indifference would have known) that for the foreseeable future (a) it was selling honey identified as "raw" honey that was not actually raw; (b) its customers (including Plaintiffs and the Class) were not aware that they were buying honey that was not, in fact, raw; and (c) those customers had a reasonable expectation that Kroger would accurately describe its Raw Honey Products on its label.

34. Despite such knowledge (or but for its negligence or reckless indifference would have known) Kroger did not disclose to the market (including Plaintiff and the Class) that it was selling cooked honey and/or that its cooked honey—falsely described as "raw" on its label—did not have the chemical properties that Kroger and the market attribute to raw honey and the Raw Honey Products.

35. At all relevant times, Kroger had knowledge that the Raw Honey Products were defective but took no action to (a) inform purchasers such as Plaintiff and the Class about the Raw Honey Products or their defects or (b) recall the Raw Honey Products.

36. Instead, Kroger concealed this knowledge from Plaintiffs and the Class.

37. At all relevant times, Kroger knew its Raw Honey Products were both defective and mismarked, but chose to conceal, suppress, or omit these material facts while distributing, marketing, and selling the Raw Honey Products to unsuspecting consumers in Illinois, Ohio, and throughout the United States.

**PLAINTIFF'S EXPERIENCE**

38. Plaintiff, Kathleen Pope, purchased Kroger's Private Selection Raw and Unfiltered Wildflower Honey in October 2018 at a local Mariano's.

39. Unknown to Pope, the so-called Raw Honey Product was mislabeled and defective in that it was improperly described as "Raw Honey" even though it had been heated to above 105 degrees Fahrenheit and the physical properties of raw honey that are recognized and promoted by the honey industry had been cooked away.

40. Relying on the efficacy of Kroger's labeling information, Pope purchased a bottle of Kroger's Private Selection Raw and Unfiltered Wildflower Honey. Plaintiff had no way of knowing or discovering that the Raw Honey Product was mismarked and defective.

41. Kroger charges a premium for its Raw Honey Products that is substantially more than Kroger and/or other companies charge for their processed honey products. For example, Kroger charges $4.39 for its Simple Truth Organic Raw and Unfiltered Honey, whereas it charges $3.41 for its Simple Truth Organic Honey (a product that is not labeled as "raw"), which is a difference of almost $1.00. Kroger charges $5.99 for its Private Selection Raw and Unfiltered

7

Wildflower Honey, whereas it charges $2.98 for its generic processed honey, which is virtually half the price.

## COMMON FACTUAL ALLEGATIONS

42. Kroger has sold thousands of bottles of its Raw Honey Products in Ohio, Illinois, and across the United States from its grocery stores.

43. By describing the Raw Honey Products as "raw," Kroger implicitly represented that the Raw Honey Products had an HMF value of 40 mg/kg or less.

44. These representations became part of the basis of the bargain when Plaintiff and the Class purchased the Raw Honey Products.

45. Plaintiff and the Class relied on Kroger's representations that the Raw Honey Products' labels, and Kroger's website advertising the Raw Honey Products, were true.

46. However, the Raw Honey Products do not conform to Kroger's express representations.

47. Kroger breached its express representations concerning the Raw Honey Products.

48. The defects and deficiencies in the Raw Honey Products are due to Kroger's decision to heat the honey to make processing and bottling easier.

49. Despite knowing of the defects in its Raw Honey Products, Kroger has not notified any consumers, purchasers, or retailers of the defects with its Raw Honey Products, nor has it provided uniform relief to anyone.

50. Plaintiff and the Class have not received the value for which they bargained when the Raw Honey Products were purchased. There is a difference in value between the Raw Honey Products as labeled and advertised, and the cooked honey that Plaintiff and the Class actually received.

8

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this class action pursuant to Fed.R.Civ.P. 23.

52. The requirements of Fed.R.Civ.P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the class (referred to herein as the "Class") defined below:

> All persons and entities in Illinois who made retail purchases of Kroger's Raw Honey products during the applicable limitations period. Excluded from the Class are (a) any judge or magistrate judge presiding over this action and members of their families; (b) Kroger and any entity in which Kroger has a controlling interest, or which has a controlling interest in Kroger, and Kroger's legal representatives, assigns, and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

53. *Numerosity*: The Class is composed of thousands of persons geographically dispersed, the joinder of whom in one action is impractical.

54. *Commonality*: Questions of law and fact common to the Class exist as to all proposed members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include, but are not limited to the following:

    a. Whether the Raw Honey Products were mislabeled;

    b. Whether the labels of the Raw Honey Products were misleading;

    c. Whether Kroger's Raw Honey labels are not in fact raw;

    d. Whether Kroger knew or should have known of the defects with its Raw Honey Products;

    e. Whether Kroger concealed from consumers and/or failed to disclose to consumers the defects with its Raw Honey Products;

    f. Whether Plaintiff and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all monies paid by Plaintiff and the Class for the Raw Honey Products and (ii) the failure of consideration in connection with and/or difference in value arising out of the variance

        between the Raw Honey Products as advertised and the Raw Honey Products as they really are;

    g.    Whether Plaintiff and the Class are entitled to restitution and/or disgorgement;

    h.    Whether Kroger falsely advertised and marketed its Raw Honey Products to consumers;

    i.    Whether the Raw Honey Products conform to the applicable industry standards;

    j.    Whether Kroger concealed the defective nature of the Raw Honey Products;

    k.    Whether Kroger's conduct as alleged is misleading, deceptive, and/or unconscionable.

55. *Typicality*: Plaintiff's claims are typical of the claims of the Class as all such claims arise out of Kroger's conduct in heating, packaging, and bottling the Raw Honey Products; Kroger's conduct in marketing, advertising, warranting, and selling the defective Raw Honey Products; Kroger's conduct in concealing the defects in the Raw Honey Products; and Plaintiff's and the Class's purchases of the defective Raw Honey Products.

56. *Adequate Representation*: Plaintiff will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions, including consumer class actions involving mislabeling, product liability, and product defects.

57. *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and courts throughout Ohio, Illinois, and the United States, would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent

rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single Court.

## COUNT I
### (ILLINOIS CONSUMER FRAUD ACT 815 ILCS §505/2)

58. Plaintiff repeats and realleges paragraphs 1-57 as though fully set forth herein.

59. Kroger's acts, complained of above, including, without limitation, falsely advertising its cooked honey products as "raw," violates the Illinois Consumer Fraud Act.

60. The Illinois Consumer Fraud Act, 815 ILCS § 505/2 ("ICFA"), prohibits unfair and deceptive acts or practices, including among other things:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965,1 in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

61. Kroger engaged in the concealment, deception, suppression, or omission of material facts in violation of the ICFA when, in selling and advertising the Raw Honey Products, it knew that the Raw Honey Products were not in fact raw, and that it had been stripped of all or many of its physical properties recognized by the honey industry and its consumers.

62. Kroger engaged in false, misleading, and deceptive acts when it misrepresented the nature of its Raw Honey Products, with the intent that others, such as Plaintiff and the Class, would rely upon the deception and misrepresentations of material facts and purchase Kroger's Raw Honey Products.

63. Plaintiff and the Class would not have purchased the Raw Honey Products, or would not have paid the premium price that was charged for the Raw Honey Products, had they known or become informed of the material defects in the Raw Honey Products.

64. Kroger's deception, misrepresentations, and omission of material facts, as alleged herein, constitute unfair, deceptive, and fraudulent business practices within the meaning of the ICFA.

65. Kroger has acted unfairly and deceptively by misrepresenting the nature and quality of the Raw Honey Products.

66. Kroger either knew (or should have known) that the Raw Honey Products were defectively processed, packaged, and labeled when the Raw Honey Products were heated to temperatures above 105 degrees Fahrenheit, such that the Raw Honey Products were not as advertised or described.

67. Kroger knew, at the time the Raw Honey Products left Kroger's control, the Raw Honey Products were defective as described herein. At the time of sale, the Raw Honey Products were defective as described.

68. As a direct and proximate cause of the violation of the ICFA described above, Plaintiff and the Class have been injured in that they have purchased Kroger's Raw Honey Products that are not, in fact, "raw" honey, and that have lost all or many of the physical properties of raw honey as a result of being heated as alleged. Had Plaintiff and the Class known the defective

nature of the Raw Honey Products, they would not have purchased them or would have paid a lower price for them.

69. Kroger used unfair methods of competition and unfair or deceptive acts or practices in conducting its business. This conduct constitutes fraud within meaning of the ICFA.

70. This unlawful conduct is continuing with no indication that the wrongful conduct of Kroger will cease.

71. As a direct and proximate result of Kroger's unfair and deceptive acts and practices, Plaintiff and the Class will suffer damages including, without limitation, costs to replace their Raw Honey Products, with products that are truly raw honey, in an amount to be determined at trial. Plaintiff and the Class paid between 30% and 100% more for Kroger's Raw Honey Products than they would have paid for competing honey that is not labeled as a "raw" honey product.

72. As a result of the acts of consumer fraud described above, Plaintiff and the Class have suffered ascertainable losses in the form of actual damages that include the purchase price of the Raw Honey Products for which Kroger is liable to the Plaintiff and the Class for their ascertainable losses, plus attorneys' fees and costs, along with equitable relief prayed for herein.

## COUNT II
### (FRAUDULENT MISREPRESENTATION)

73. Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

74. Kroger falsely and fraudulently represented to Plaintiff, the Class, and/or the consuming public in general, that its Raw Honey Products had not had their physical properties altered, compromised, or destroyed, and that the honey was in fact "raw" honey.

13

75. Kroger falsely represented to purchasers and consumers that its Raw Honey Products were "raw" honey when, in fact, the Raw Honey Products had been heated to over 105 degrees Fahrenheit, thereby compromising, altering, and/or losing its raw honey properties.

76. When these representations were made by Kroger, Kroger knew the representations were false. Yet Kroger willfully, wantonly, and recklessly disregarded whether the representations were true.

77. These representations were made by Kroger with the intent of defrauding and deceiving the Plaintiff, the Class, and the consuming public, all of which evidence reckless and/or willful indifference to the safety and welfare of the Plaintiff, the Class, and the consuming public.

78. At the time the representations were made by Kroger, Plaintiff and the Class were unaware of the falsity of said representations and reasonably believed them to be true.

79. In reliance upon said representations, Plaintiff and the Class purchased Kroger's Raw Honey Products, thereby sustaining damages and injuries and/or being at an increased risk of sustaining damages and injuries in the future.

80. Kroger knew and was aware, or should have reasonably been aware, that its Raw Honey Products were defective and not fit for their customary and normal use.

81. Kroger brought its Raw Honey Products to the consumer market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiff and the Class.

## COUNT III
### (FRAUDULENT CONCEALMENT)

82. Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

83. Kroger knew or should have known that its Raw Honey Products were defective and not fit for their ordinary and intended use; did not perform in accordance with either the advertisements and marketing materials that Kroger distributed; and/or did not conform with the reasonable expectations of ordinary consumers including Plaintiff and the Class.

84. Kroger fraudulently concealed from and/or intentionally failed to disclose to Plaintiff and the Class that its Raw Honey Products were defective.

85. Kroger had exclusive knowledge of the defective nature of its Raw Honey Products at the time of sale. The defect is latent and not something that Plaintiff or the Class, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

86. Kroger had the capacity to, and did, deceive Plaintiff and the Class into believing that they were purchasing honey that was free from defects, including over-heating that would destroy the enzymes that Plaintiff and the Class expected to be in the honey.

87. Kroger undertook active and ongoing steps to conceal the defects with its Raw Honey Products. Despite Kroger's awareness of the problem, Plaintiff is aware of nothing in Kroger's advertising, publicity, or marketing materials that disclosed the truth about its Raw Honey Products.

88. The facts concealed and/or not disclosed by Kroger to Plaintiff and the Class are material in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Raw Honey Products.

89. Kroger intentionally concealed and/or failed to disclose material facts for the purpose of inducing Plaintiffs and the Class to act thereon.

15

90. Plaintiff and the Class justifiably acted and relied upon the concealed and/or misrepresented the facts to their detriment, as evidenced by their purchase of the Raw Honey Products at artificially inflated prices.

91. Plaintiff and the Class suffered a loss of money in an amount to be proven at trial as a result of Kroger's fraudulent concealment and nondisclosure because (a) they would not have purchased the Raw Honey Products on the same terms if the facts concerning the defective Raw Honey Products had been known; (b) they paid a price premium because they believed the Raw Honey Products would actually be raw honey and otherwise free from defects; and (c) the Raw Honey Products did not perform as promised.

92. By reason of the foregoing, Plaintiff and the Class suffered, and continue to suffer, financial injury.

## COUNT IV
## (UNJUST ENRICHMENT)

93. Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

94. Plaintiff and the Class conferred a benefit on Kroger when they purchased the Raw Honey Products.

95. Kroger has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class's purchases of the Raw Honey Products, the retention of which, under these circumstances, is unjust and inequitable because the Raw Honey Products were defective, not fit for their ordinary and intended use, and did not perform in accordance with their advertisements, marketing materials, and warranties disseminated by Kroger, nor the reasonable expectations of ordinary consumers. The foregoing caused Plaintiff and the Class to lose money.

96. Plaintiff and the Class suffered a loss of money as a result of Kroger's unjust enrichment because (a) they would not have purchased the Raw Honey Products on the same terms if the facts concerning the defective Raw Honey Products had been known; (b) they paid a price premium because they believed that the Raw Honey Products would be free from defects; and (c) the Raw Honey Products did not perform as promised.

97. Because Kroger's retention of the non-gratuitous benefit conferred on them by Plaintiffs and the Class is unjust and inequitable, Kroger must pay restitution to Plaintiff and the Class for its unjust enrichment.

98. Plaintiff and the Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon, all profits, benefits, and other compensation obtained by Kroger from its deceptive, misleading, and unlawful conduct.

## COUNT V
### (DECLARATORY RELIEF 28 U.S.C. § 2201)

99. Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

100. A justiciable controversy of fact exists such that the court may provide declaration relief.

101. Defendant has acted or refused to act on grounds that apply generally to Plaintiff and the Class such that final declaratory relief is appropriate respecting both Plaintiff and the Class as a whole within the meaning of Fed.R.Civ.P. 23(b)(2).

Plaintiff seeks a declaratory ruling that:

    a. The Raw Honey Products have a defect caused by Kroger's processing, heating, and bottling methods, which causes the honey to lose the physical properties people seek in raw honey. These defects are material and require

17

        public disclosure of all of the Raw Honey Products sold by Kroger over the last 3 years;

    b.    Kroger will establish a testing program and protocol, under Court supervision, to be communicated to the Class, which will require Kroger to inspect all of its Raw Honey Products in sufficient numbers to ensure that the Raw Honey Products are in fact raw honey for a period of 5 years.

### COUNT VI
### (INJUNCTIVE RELIEF)

102. Plaintiff, on behalf of herself and all others similarly situated, adopts and incorporates by reference all foregoing allegations as though fully set forth herein.

103. Plaintiff and the Class possess a clearly ascertained right in need of protection; namely, the accurate labeling of Kroger's Raw Honey Products.

104. Plaintiff and the Class are likely to succeed on the merits of their claims.

105. Plaintiff and the Class will suffer irreparable harm without an injunction. In particular, Plaintiff and the Class will not be able to accurately evaluate, and pay the proper price for, Kroger's honey products unless an injunction is issued requiring Kroger to either (a) market, distribute, and sell uncooked—truly "raw"—honey under its Raw Honey Product labels or (b) refrain from selling cooked/processed honey under its Raw Honey Product labels.

106. Plaintiff and the Class have no adequate remedy at law. Although Plaintiff and the Class are entitled to monetary damages resulting from Kroger's false advertising practices, Plaintiff and the Class cannot readily quantify the damages for the lost health benefits going forward from Kroger's deceptive acts.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Kathleen Pope, on behalf of herself and all others similarly situated, prays for a judgment against Defendant, The Kroger Co., as follows:

(A) For an order certifying the Class, pursuant to Rule 23, appointing Plaintiff as representative of the Class, and appointing the law firms representing Plaintiff as Class Counsel;

(B) For compensatory damages sustained by Plaintiff and the Class;

(C) For equitable, declaratory, and/or injunctive relief as requested herein;

(D) For payment of costs;

(E) For both pre-judgment and post-judgment interest on any amounts awarded;

(F) For punitive damages;

(G) For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

(H) For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself and others similarly situated, hereby demands a trial by jury as to all issues so triable.

Dated: September 24, 2019                           Respectfully submitted,

/s/ Richard S. Wayne
Richard S. Wayne (0022390)
William K. Flynn (0029536)
Stephen E. Schilling (0086897)
STRAUSS TROY CO., LPA
150 E. Fourth Street
Cincinnati, OH 45202-4018
(513) 621-2120 – Telephone
(513) 629-9426 – Facsimile
E-mail: rswayne@strausstroy.com
E-mail: wkflynn@strausstroy.com
E-mail: seschilling@st5rausstroy.com

*Counsel for Plaintiff*

OF COUNSEL:

KENT A. HEITZINGER
 & ASSOCIATES
Kent A. Heitzinger (IL Bar No. 3123385)
*(Pro Hac Vice To Be Filed)*
1056 Gage St., # 200
Winnetka, IL 60093
Phone: (847) 446-2430
E-mail: heitzinger.law@gmail.com

THE LAW OFFICE OF TERRENCE BUEHLER
Terrence Buehler (IL Bar No. 6181738)
(*Pro Hac Vice To Be Filed*)
1 South Wacker Drive, Suite 3140
Chicago, IL 60606
Phone: (312) 371-4385
*E-mail: tbuehler@tbuehlerlaw.com*

111841.001.13616550_1.docx